I will next hear the argument in No. 13-15-19, A&E Auto Sales against the United States, Mr. Dinser. May it please the Court, Chrysler, not the United States, rejected Plaintiff's Dealerships Agreement in bankruptcy. Plaintiffs have failed to allege the property interest and government conduct necessary to avoid dismissal under a crawl-and-twombly. Turning first to the property interest, which is what this Court advises in considering a takings claim, the plaintiffs have not identified in their pleadings a cognizable property interest, which is the first thing that they must do. Why? I mean, it seems to me that they identified a number of property interests, the state and federal law-protected franchise agreements, a number of physical pieces of property in which they invested in order to fulfill their obligations under the franchise agreements to the Chrysler Corporation. Why are those not property interests? And what the case law requires, Your Honor, is a cognizable property interest which matches up with your claim. So they do identify, for example, Your Honor, the franchise agreement, but what they don't identify is the property, the stick-in-the-bundle of rights necessary regarding that franchise agreement that matches up with their taking claim that their franchise agreement was taken or rejected in bankruptcy. The property description is a legal issue, and one of the fundamental elements of the property description is the background principles that surround and limit the property interest. So when they signed their dealership agreements, they got a certain interest in the dealership agreements, but at that same time, the bankruptcy laws that existed at that time limited exactly what bundles in the sticks of rights that they got, and specifically, they did not get the right to not have their dealership agreements canceled or rejected in bankruptcy should their counterparty go bankrupt, which is what happened here. So it's not enough just to allege a property interest, a piece of property or what. It has to be a cognizable property interest that matches up with their takings claim. Well, that sounds more as though you're arguing there's no takings claim, rather they didn't have a property interest, and that seems to be the heart of the question here, is whether they've alleged that the government caused Chrysler, in this case, and GM and Chrysler, I guess, in the other one, to cause GM and Chrysler to submit plans in the bankruptcy court, which eliminated their property rights, and that's a taking. So that's essentially the question that we have before us. And if I understand correctly, one of your theories is that they needed to address that there was economic impact on them as a result of the government's actions, and that there isn't any allegation that their property interest would have had value apart from the government's action. Do I understand that correctly? Yes, Your Honor. So there's two elements. There's the property interest that has to match up with the claim that they're asserting, and then there's the government conduct. And one aspect, Your Honor, of the government conduct is that they have to allege that there was a direct effect on them from the alleged government conduct. And what we have here is plaintiffs, there's no question that they've alleged that their dealerships have no value or very low value. There's no question that they've alleged that. What they're missing in that aspect, Your Honor, is that they need another allegation that demonstrates that absent the government conduct, they would have something that is of significant value. And what we know is we know Chrysler in the real world went through bankruptcy. We know that. And they have not alleged that absent the government conduct, the government hadn't gotten involved at all, that somehow Chrysler stayed solvent and stayed in a contractual relationship with them. So absent an allegation regarding what would have happened if the government hadn't gotten involved at all, they have not alleged that there's an impact by the government conduct. Basically what you have is you have in the actual... Their property would have had some value if the government had not intervened here. At all. And what we have, what we know is that the bankruptcy courts have found, concluded that there was no other party interested in investing in these auto manufacturers and that absent the government action, they would have been liquidated. And that in liquidation, there's no agreement anymore to make cars and to service these franchises. Can I ask you, why is it that you think that we can assume the truth of the findings of the bankruptcy court? We're not asking, except with respect to the collateral stop on the control issue, we're not asking, Your Honor, with respect to, I was answering Judge Guy, with respect to the economic impact, the plaintiffs have not alleged the opposite. And so what they are left with is the real world where Chrysler did in fact go bankrupt. And they have not alleged that how Chrysler survives absent the government action and how Chrysler continues to make cars absent the government action. But you're asking for a dismissal on the pleadings. You're saying that there is nothing that could evolve on further review which could provide any support for, any tolerable support for this claim. Isn't that why you're here? Yes, Your Honor. And what Iqbal and Twombly tell us is that they have to have a plausible allegation as to what happened. But I guess the question is what's the, the briefs on both sides are, don't have a lot of authority on this question. In a takings case, if you assume that the Penn Central test is the applicable test or perhaps if the Lucas test is the applicable test, what case says that you have to allege that your property would have had value apart from the government action? If there's no allegation that the property would have had value, Your Honor, then there's, then basically they have failed to rule. Yeah, what case though? I mean, I, I, I had my clerk take a look at this. I found a district court case and maybe a third circuit case that bears on this. But you really, you haven't done the research on this question and to cite as cases that say that when you're making a takings allegation under Penn Central that you have to allege what you say they have to allege. What, what, what this court said in 767 Third Avenue, and I'm quoting, even though regulatory taking analysis is normally ad hoc and fact-intensive, the United States may still be entitled to judgment as a matter of law.  Sure, but what, what, where's the authority that they have to allege as part of their takings case under a Penn Central theory that their property would have had value apart from the government action? I, I don't have a, a, a, that pinpoint site. What I would point to, Your Honor, is the, the decision in accepted insurance where this court said this, that, that, that plaintiff cannot rely on broad characterization and must, quote, pinpoint what steps and steps in the sequence of events constituted conduct that the government could not engage in without paying compensation. There has to be a, a pinpoint as to how the government affected them, directly affected them, and caused them to, to, to not have the value of their property. Right, but, I mean, but that, that part of it is, is surely alleged. They say the government said, we will lend you money on the condition that you terminate 769 or something dealership agreements. Is that, by the way, is, is that actually in a written contract somewhere, or, but anyway, they allege it. They, they allege that. And, and, it's, it's not, but, but, what, what. So, and, and, and, and they say the government, that's government action, placing as a condition of a loan, or a series of loans, or debtor in possession financing, or, or whatnot, that, I guess, first New Chrysler, and then Old Chrysler terminate these dealers. New Chrysler by not buying them, and then Old Chrysler by saying, we're not a car company, why would we need dealers, dealers anymore, so we may as well reject them. The first under 363, and the second under 365. The connection between the government and the dealer termination is not a mystery here. It, it, but, it, it, but there is something missing, Your Honor. What you've described can't be a taking, because the, the direct government action isn't one that, where the government is, is asserting, and, and forcing the, the, the Chrysler to participate. There, there can't be a direct government action if there's an intervening third party choice. And what we have here is we have Chrysler, as, as the allegation, making the choice to, to accept the loan with whatever condition, as opposed to going through bankruptcy or taking some other option. And once Chrysler intervenes and makes that choice, it, the, the, the government, there's no government action directed to the plaintiffs. There's, what. I thought the allegation directed to, but directed at, is the allegation, right? But. That you made a deal with a private party, the new Chrysler in this case, that you would together agree to harm them. No, but Your Honor, if, if, for there to be a direct government action, there has to be either statutory forcing, regulatory forcing, physical forcing, or invasion. Well, I, I, I, I must say I found, I failed to find any authority that you cited that says that. Well, for example, Your Honor. In Armstrong, for example, you took a piece of property, contractual, commercial choice, right? You took this unfinished boathouse. It wasn't statutory, it was clearly authorized, it was for the good of the, of the war effort or, or whatnot, had to pay for it. Well, and I see that's my time, but if I could, if I could just answer that, that, Your Honor, that was physical. We went and we actually took the boat. What this court said in B&G, on the other hand, where we provided a block grant to the state of California, and, and we said, look, you can have this block grant if you do certain things, and, and one of them is to make it, make it illegal and difficult for, for cigarette machine owners to install their cigarette machines. And the plaintiff who, who had contracts regarding the cigarette machine sued, and, and the intervention of the state of California was found to be enough that there, that there was no government, that, that there was no government action and there wasn't a taken. So, Your Honor, a, a, a, a loan, Chrysler, which Chrysler was free to reject, is not the kind of direct government action that can be the basis of a taken, because Chrysler had the choice. And, and that, that is just one of the, of the problems with the, with plaintiff's, the plaintiff's complaint. And with that, Your Honor, I reserve the rest of my time. All right. Now, let me ask you, Mr. Dins, your, your argument in the next case is based on the same premises? The, the, the, the plaintiffs in the next case have slightly different allegations in certain parts, and also they have one, they, they allege certain facts that are different and there's a separate claim as well, a judicial taking. All right. We'll keep, continue to keep them separate in that case. And let's hear from, let's see, Mr. Marzullo. Thank you, Your Honor. Have the United States issued an order? Let me, let me ask you a hypothetical. Certainly, Your Honor. Let, let's suppose that it is the case that absent intervention by the United States and loans by the United States, there would have been no value to these franchises, that there would have been a liquidation of Chrysler, and that in that liquidation, there would have been no money flowing to the dealerships. Okay? Let's assume that. Would, would that circumstance create a takings claim? I'm not certain, Your Honor, whether it would or would not. I think it depends on additional facts. If those facts were alleged in the complaint, that issue would arise. They are not alleged. No, no, I understand, but you have to answer, you have to answer hypotheticals. That's what happens when you come here. And my hypothetical is that it is agreed and established and alleged that there would be no value to the dealerships if the United States had not intervened as a lender here. I think there's situations, Your Honor, in which the court has found that there can be a taking of a property right that in the end gives rise to no damages. That's a damages issue. If, if the government could prove that these, that, that inevitably. So there would be no recovery under my hypothetical? There would be no damages recovery. I think that, I think that's correct, Your Honor. But that might actually turn into a liability issue, right? Absolutely. Because in Penn, if you're doing Penn Central, the most important factor is the severity of the impact. And it could be that if you had to accept for purposes of the hypothetical that the companies would have gone through liquidation, they would have stopped making cars, your dealerships would have been, would have been valueless. And regardless of the government, then you might actually lose on liability on the Penn Central, not just there is a physical taking like the taking of the Iowa interest, but no damages like the Brown case. It might actually translate into a no liability issue. So I, I, I'm quite interested in the question to what extent do you allege that, that the scenario of, of liquidation and no value is, is a false scenario? Does your complaint depend on that? Well, first of all, it's a false scenario, Your Honor, because this is a motion to dismiss under 12b-6. Those facts are not before this court on this complaint. I doubt, quite seriously, that the government is going to be able to prove in this case, when it does get to evidence, that despite Congress' passage of the Emergency Economic Stabilization Act, despite the establishment by the President and the Treasury Department of the auto industry finance program to save the auto industry in order to stabilize the nation's economy at a time when our nation was teetering on the brink of a new depression, that Chrysler would have simply gone away entirely. Well, that's an argument, as I understand it, that the government would have intervened and saved the dealerships rather than to let the companies liquidate, which is in fact what happened. But I guess the, to the extent that you're saying that, well, it's true that in liquidation these dealerships would have been valueless, but the United States, by coming in as a lender, had some obligation to save the dealers in addition to saving the companies, that seems to me to be an odd kind of takings argument, because what you're really saying is the government acted unfairly in not saving the dealers. How does that create a takings liability? Absolutely not, Your Honor. That is not our argument. First of all, we are saying it is untrue that the franchises were valueless. In fact, three-quarters of the franchises weren't permanent. Valueless under what circumstances? Valueless in the liquidation? Do you contest that they would be valueless in the liquidation? We do not know that is what would have happened, Your Honor. That's an issue of fact that is going to have to be put forward by the government. If they think they can prove that absent government intervention, Chrysler would have simply disappeared and there would have been zero value to its assets. I've not seen that proof, and I doubt that they can demonstrate that. Well, but I guess what the government is saying, as I understand it, is that it was up to you to allege that the dealerships would have had value absent government intervention, and that they are saying that your failure to allege that means that you have not alleged the economic impact prong of the Penn Central test as is required. Paragraph 96 of our complaint, and I know Your Honor raised that issue with counsel for the government, Paragraph 96 of our complaint alleges that these automobile dealers, with all of the investments that we also allege in their showrooms, in their advertising, these are family businesses that have been in business in many instances for many generations, that as of July 1, 2009, as a result of the active hand of the government requiring Chrysler to terminate these dealerships, the equivalent of an order from the government that these dealerships be terminated. No, but it doesn't allege, the complaint does not allege that absent the government action that these dealerships would have had value. Well, if that is a requirement of pleading, and I think the court accurately stated that we're not aware of a case that requires that, but if that's what's required, then we should be allowed to amend the complaint to make that allegation, because I think we can certainly make that allegation and prove it at trial. Well, are you required under the cases to make an allegation about economic impact in a Penn Central taking? I don't think so, Your Honor. You know, the government keeps saying that we haven't alleged a theory in our complaint, and as I understand Rule 8, it says that we are to allege facts, not theories. Now, we can allege that this is a Lucas taking, we can allege the three elements of a Penn Central taking and what they are, and sort of quote those. I'm not aware of a case, the government hasn't cited one, that says that in order for a complaint to withstand a motion to dismiss, we've got to anticipate this false scenario that the government is putting forward to the court. That is, that when we filed our complaint, we were supposed to know that the government was going to claim that these franchises were valueless anyway, and that would have been a, that the government's allegations that they were going to make are untrue. Well, I guess the problem, as I see it, is that neither side has cited any cases one way or the other on whether you're required to plead economic impact and what you're required to plead in that connection. Well, I think that's right, Your Honor. It seems to me as a fact matter, if one has an ongoing business as an automobile dealer, and the government procures an order that prohibits the sale of Chrysler Automobiles, including the ones that are in your showroom, the government has an order prohibiting you, as of the date of that order, immediately, from servicing the Chrysler Automobiles you've sold, requires that you take down the advertising on the front of your showroom, and prohibits you, under penalty of contempt, from holding yourself out as a Chrysler dealer, that the court can reasonably derive from that that the dealership is no longer valuable. But if the court thinks that we need to say, and as a result of that, the dealership was no longer valuable, then we'd be happy to make that claim. I think that that's not the suggestion. The suggestion is that you have to allege that if the government hadn't come in here, that the dealerships would have had value, which is not an allegation which is in the complaint. That is not our case. Our case is that the government required the termination of these dealerships, even if they had not. And I think the court mentioned this earlier, and I'd be remiss if I didn't challenge this while I'm up here. The government has cited no case saying there has to be an order or command of government in order to constitute a taking here. Consider the situation in which the government goes to… How can that be a taking under those circumstances? Well, I don't accept that allegation. Well, I understand, but hypothetically, is there a takings claim under those circumstances? It's a very hypothetical question that I think the court has addressed. It is exactly the IOLTA cases, Brown and Phillips. And that is, if the Supreme Court first held, yes, there was a taking of the interest on the IOLTA accounts, but in the end there were no damages because there was no money that you could have recovered. So I think it's sort of a theoretical, hypothetical notion. And maybe it goes to that economic value question. And perhaps, Your Honor, perhaps if these franchises were valueless at some point, the government could say, then you've lost nothing, and maybe that's a liability issue. That's not this case. You know, the government keeps telling you these franchises were valueless, and my question is, when did they become valueless? Because three-quarters of the dealers were not terminated. So at the time, Chrysler submitted its viability plan, and that's what happened here. Chrysler submitted for approval to the United States government its viability plan. The United States government turned it down, said that is not acceptable because we require that you terminate 789 dealers. That's the government requirement. Can I ask you, just to the extent you know, I know you allege that in the complaint. Was that actually part of some written evidence agreement between the government as lender and either new Chrysler or old Chrysler? Well, it is our understanding that that's the way it happened, Your Honor, that it is in the nature, it's like a permit. In terms of the documents, the government has refused to produce documents under FOIA. They have refused to produce any discovery documents. So most of these documents are still not within our possession. Can I turn to another question? And I want to put aside now the question of whether the dealerships were valueless and focus just on the nature of the government's action here. It said, we see a problem. We want Chrysler to survive. Nobody, no other source of funds is coming forward. It's important to the public interest that Chrysler survive. We will lend money, but we want to impose certain conditions on the lending of money. And it's at that point I want to ask you, what are the inquiries that you think the Court of Federal Claims would have to make to identify what more facts would turn that scenario into a taking? Is it something about favoring one class of potential people over potential claimants over another? Is it something about coercion? The Court of Federal Claims sent this case to us with a kind of plea for guidance, right? And so can you try to illuminate? Sure. And I think the question is whether the active hand of government, whether government was the causative element here. If it were the case that Chrysler had proposed to terminate these dealers, we wouldn't be here today. We wouldn't have a case. But the inquiry for the trial court, and our suggestion is the instruction this court should give, is the question is whether it was the government's requirement, it was the government's idea, if you will, that for the public interest in order to help stabilize the economy, 25% of the Chrysler dealers had to be terminated. And if it was the government that implemented that, whether they did it by a direct order or whether they did it through this bankruptcy process using Chrysler, makes no difference. So that's the inquiry. Was this the government's idea? Well, suppose the government did it in order to ensure that there would be a viable entity and that the loan would have a good prospect of being repaid, the sort of action that a private lender might take in these circumstances. Would that be a taking? I think it would, Your Honor. And by the way, I'm not entirely sure that a – first of all, a private lender couldn't take this action because only through a sovereign act could these franchises be canceled because of the state franchise. Well, it's an action of the bankruptcy court, but if it were – if a private lender came into a bankruptcy proceeding and said, we will loan you money for reorganization, let's say, only if we're convinced that the resulting entity will be viable and that we think the termination of the dealerships is necessary to achieve that, that would be permissible in the bankruptcy context, correct? And that wouldn't be a taking, would it? Well, it obviously wouldn't be a taking because a private lender is not sovereign and doesn't have the power of eminent domain. Well, how does it – if that's permissible, how does that become a taking when the government is involved? Well, I'm not sure it's permissible. I would go to that issue, Your Honor, and I don't know whether the dealers would have some sort of cause of action against the private lender that they don't have against the government. But as to the government, it is precisely the point that the court made. The whole reason for this Chrysler restructuring and for the termination of the dealers was to benefit the economy, to save jobs, to save the automobile industry, which the government considered important to our nation's well-being. And if some people are required to sacrifice in order to accomplish that, if you've got a lifeboat that doesn't hold everybody and the government says, all right, you five guys are going to have to stay on the Titanic so everybody else can go, that's what the takings clause is all about. Even if the government had no obligation to provide the lifeboat in the first place? I don't see that that makes a difference. If a government has no obligation to build a hospital or build a highway but decides to do so and takes one's property, then one has the right to just compensation. And that is, I think, the holding of cases. Going back to this command issue, consider cases like Loretto, Chrysler, Handler. Those are all cases in which the government merely authorized something, authorized the placement of a cable box, authorized the construction of a hiking and biking path, authorized the installation of water wells on the plaintiff's property. It's that authorization, it's the government involvement for the public benefit, for public use, that triggers the Fifth Amendment which provides that the government can take any property it wants for public use. It's just required to pay just compensation. That's what the government did here. The government said, in order to make this system work, we are going to have to cancel your franchises. I don't think we'd be here if the government had issued that as a direct order or if the government had said, in order to make this work, we're going to have to seize your showrooms and give them to somebody else to take them over. What we have here is a case that is well within the precedent of cases like Kimball Laundry where the government, for the war effort, took over the laundry business because they needed to wash soldiers' uniforms. General Motors where they took over a warehouse and destroyed General Motors equipment because they needed the warehouse for the war effort. International Paper, which is a case that we rely on quite heavily, where the government redistributed the hydropower from Niagara Falls and said, we've got to cut off the power to International Paper because they make newsprint which is not essential to the war effort. For the benefit of a war effort, International Paper is going to have to shut down its business. All of those situations were found to be takings and our case is directly within that. Once again, I would urge the court to refer back to the fact that this is a motion to dismiss. This case has come up to the court, the government making all kinds of assertions and allegations, factual assertions and allegations about what would or wouldn't have happened. I'm not even sure if that's relevant or not. Allegations about the value or lack of value of these franchises. Allegations about who did what. Allegations that Chrysler discretionarily terminated. All of those assertions of fact which are hotly contested have no place in a motion to dismiss. Unless you're supposed to make the allegations that support you. But we can fix it now if that's what the court determines. But in any event, we're way ahead of Rule 12B6 here in terms of the facts that we are discussing. And I think what we will show is for the public good. This is what the complaint alleges. That for the public good, the government required the termination of these family businesses, the termination of these franchises, the closing down of the showrooms. And the dealers weren't even allowed to sell the cars that they had in their showrooms or service lawns that they had already sold. Can I ask you, is it part of your case or a possible part of your case to make an inquiry into the government's decision making process and deciding who of the various potentially adversely affected parties relating to Chrysler, whether it's union employees, retirees, dealers, bondholders, any number of others, how the government was thinking about benefiting one versus the other? Or is that really outside what you would contemplate occurring in proof of your case?  It's very difficult at the time you file the complaint to know all the twists and turns that litigation is going to take and the issues the government is going to raise. I think what is significant is that as we do know from the public record, the Treasury Department was involved in round-the-clock negotiations for weeks and weeks. The President of the United States became involved in announcements and was involved in some of these decisions. And certainly they involved the auto workers who ended up owning a portion of new Chrysler. The United States, which also ended up, by the way, owning a portion of new Chrysler shed of these, as they saw it, unnecessary and undesirable dealers. And I think it's relevant only to the extent that it demonstrates that this was a project, a program undertaken for the public benefit. It was a public use and that's why it's under the Fifth Amendment. And I think it refutes this notion that the government has asserted that this was just an ordinary commercial investment and had nothing to do with saving the nation's economy. Any more questions for Mr. Mazzella? I've overstated my time, Your Honor. Thank you. Thank you, Mr. Mazzella. Mr. Dinser, we'll proceed with rebuttal here and then we'll continue with the next case. Your Honor, if I could just address some of the things. There certainly would be not enough lifeboats, Your Honor. That's a question of fairness and equal protection question. The government was not obligated to bring any lifeboats. The fact that some dealers got saved does not negatively affect the ones who actually suffered the effects of the market. There's no obligation there and the court should reject that. The plaintiff's counsel said that the government idea was a taking. The government idea of forcing Chrysler. Your Honor, an idea cannot be a taking. The most important thing that we can emphasize, nothing else, is that the government did not force. It did not bring in its sovereign capacity to require Chrysler to do anything. Isn't that a question of fact to be brought out with evidence and testimony as to what was forced or not forced? You're saying as a matter of law, it cannot conceivably be viewed as a government action. As a matter of law, Your Honor, the plaintiffs have not identified in their complaint how. If there was a statute that the government used to force Chrysler, name it. If there's a regulation, name it in the complaint. If the government came to their property and required it. There's a constitution. I'm sorry? You see, there's no statute. If property is taken for public benefit, there we are. Your Honor, if there was a physical taking, there's no allegation that the government physically took any of their property. Yeah, but you have to concede that there's some circumstances in which a government payment could result in a taking, right? Yeah. If the government says to X, you know, we'll pay you a million dollars if you destroy somebody's barn. Without a public interest justification for doing that, that's potentially a taking, right? If the government has an agent or pays somebody to use the government's own sovereign authority to go on somebody's property. No, no, that's not part of my hypothetical. It's not utilizing the government's sovereign authority. It's asking someone to take an action which destroys somebody else's property. That could be done as a result of a payment, of paying somebody to do it under some circumstances. No? No. No, Your Honor. Never? What I would say, Your Honor, is if the destruction of the barn was not authorized, then we're talking about a potential taking. No, no, I'm talking about authorization. We'll pay you to do this. It's a glut of barns. No, no, no. I understand. If the government has said, we'll pay Joe to go ahead, and it's the destruction as opposed to the taking. The destroying of property typically is not a taking. But if we pay Joe to go on, there's a glut of barns. So we pay Joe to go on these people's property to use the government's sovereign authority, and we're doing it not. No, that's not part of the hypothetical. It's not the government's sovereign authority. It's just simply paying somebody to do an act which, if performed by the government directly, would be a taking. It seems to me that you have a difficult time saying that it can never be a taking just because it involved the payment, the conditional payment of money. I agree with you, Your Honor. I think the place that I'm hanging up is I would disagree whether the destruction of the barn would be a taking. But let's say we know that the laying of cable over people's houses in Loretto was a taking. And, in fact, so if the government paid Joe to do it instead of the government doing it itself, then I would agree with you that that would be because Joe is now using the government's authority to lay the cable over it. But what we have here is we're not – there's no allegation that Chrysler did something for the United States. Chrysler had the authority. It wasn't illegal. It didn't need the government's permission. Well, the allegation is that the government wouldn't loan money unless they terminated a substantial number of dealers, right? Yes, Your Honor. But Chrysler, unlike Joe hanging the cable over people's houses, Chrysler had that inherent authority to go to bankruptcy court and to reject those dealers. It already had that authority. It didn't need it from us. Well, then the question is whether the government was acting perhaps the way a private lender would under the circumstances and say, I want to make sure that the ultimate entity here coming out of the bankruptcy is a viable entity. I want to make sure that there's a good prospect that my money will be repaid, and I think that in order to have viability, you've got to terminate a substantial number of dealers. Under those circumstances, maybe it would be okay. And those are the circumstances that plaintiffs allege, not only the facts. What plaintiffs allege is that the government went in and made a condition of the loan that Chrysler voluntarily took. If there was a forcing of Chrysler, we could talk. Maybe Chrysler would have a claim, but not the plaintiffs because they're too far removed. But there's not a forcing even of Chrysler, so they're missing even that first step. Chrysler could say, hey, government, we're not interested, and walk away and do what they were entitled to do, which is go into bankruptcy. Don't go to bankruptcy. They took the money, and then they used their own power to do what they already had the right to do, which was go to bankruptcy. But there's no question that they took that action, at least in part, because the government told them that was a requirement of the loan. That's an allegation. But when the government – if the government goes into the marketplace and says, we want to buy a hammer, and we want to buy a steel shafted hammer. And so people who make hammers think, okay, we're not going to buy any sources – we're not going to source from graphite shafted hammers. We're making a decision. We're making a commercial decision to go into the market and buy something, and somebody is getting harmed, the people who make those graphite hammers. And it can't be that every time, every single time the government goes into the market to do anything, that somebody who might say, oh, look, I was harmed out here, that they have a taking side. I mean, that is quite obviously not what's going on here. The facts about which I think you all agree is that the government targeted, eyes open, specific, because of, not in spite of way, said these entities that we are prepared for public purposes to invest money in must cancel certain property rights of third parties. Otherwise, we won't put the money in it. That is their allegation. So that's what needs to be focused on, which is hard enough without – I'm talking about things that are quite obviously different. But Your Honor, they're not in the sense that the government, when coming in there and making a loan, is doing more or less the same thing it is when it's – it's not – in looking at the government conduct, you don't look at the purpose and you don't look at the intent or the objective, because the government's conduct, even for buying the hammer, is for the public good. It's always for the public good, hopefully. And so what you look at is the action that the government has taken. And the action that the government took was not in a forcing manner. It was not the proverbial gun to anybody's head, let alone the plaintiff's. It was a, would you like to participate in this transaction, Chrysler? And if you don't, okay, you don't have to. There's no law that says you have to. But isn't that a factual matter in dispute that warrants development? No, Your Honor, that's not disputed. The action that the plaintiffs allege is a loan. And if I could quote plaintiff's counsel at the trial level where the judge asked, well, there's no doubt, is there, that Chrysler could have rejected the offer. There's no evidence that you know of that I mean. In other words, they did it more or less voluntarily to get money. Is that correct? Chrysler did. And a respected counsel says, yes. I think it's broadly stated as a general proposition the answer is yes. And he goes on. He says clearly they wanted and needed the government's help. That is part of the allegation. Then it goes on a little later. He says, but yes, it's true at least at that point Chrysler could have rejected. And so we talk, that's the voluntary act of taking the loan and then doing something that it possessed under the statute. In answer to Your Honor's question about the Penn Central pleading, they must allege plausible taking. It's required that they allege plausible taking. And if they don't allege a physical taking, they have to allege economic impact. They have to allege some direct economic effect of the government action. And that means in the but-for world. What about their argument that they should be allowed to amend to state that if they haven't already? Your Honor, first of all, they've known our arguments throughout the case, and they have the opportunity. They should have taken it below. But also, Your Honor, we don't believe that they can plausibly amend any government impact. In a but-for world, if the government completely steps back, that these franchise agreements have value, which is why counsel, when you ask that question. You mean it wouldn't satisfy Rule 11? No, Your Honor. And not only that, but when Your Honor asked counsel that at this podium, what counsel started talking about was a but-for world where the government makes the loan anyway. And he talks about the lifeboats. It's the fact that in their but-for world that they're imagining, the United States still brings the money, but now just doesn't put this condition on it. Well, of course, that's not the proper way to consider government action in the taking, the proper method of consideration is what happens if the government steps back and takes its hands off? What is the value of your property then? And they have not alleged it, and when given a chance by Your Honor, they have not identified it here in court today. So, Your Honor, we'd ask you not to allow them to amend their complaint, but instead to order the trial court to dismiss the complaint. Can I just ask, I think Mr. Marzullo said that you did not argue to the Court of Federal Claims this specific point that they needed to allege in the complaint that their franchise agreements would have had value in the absence of government lending. Did you or did you not? I believe we did. I do have a cite here, and I'm quoting from the complaint, I mean from our, I believe our motion to dismiss, where we say, likewise here, any alleged economic impact upon plaintiffs resulted from market dynamics not controlled by the government and application of the bankruptcy law. So, we certainly raise the economic impact issue. Right, but that's not a pleading point. I mean, the fact is, I mean, if your brief here is full of all sorts of assertions about the state of the world that are well outside the complaint because you have a kind of a narrative that you're trying to convince with lots of foundation in the bankruptcy court opinions, but Mr. Marzullo said we really weren't told in the trial court that we need to add a paragraph to our complaint saying these franchise agreements would have had value in the absence of government intervention. I believe we raised that. I will check for the citation. I believe that we raised that below. I will check for that. But even in the absence of that notice, the simple pleading requirements for a takings case are either, I mean, there's only two types of takings cases. There's a physical takings case, which case you allege that the government came onto your land, or there's a regulatory takings case. And in a regulatory takings case, whether it's Lucas or whether it's Penn Central analysis, there has to be a direct government action effect. And you can say it because of the Penn Central analysis, or you can say it because you have to allege that the government directly affected your problem. I'm sorry, where does the directs come from? The fact is you acknowledge, citing the Texas State Bank case, that the effect does not have to be direct. Well, it has to be direct in that it has to directly flow from the government's action enforcing the requirement. If there's a third party that intervenes, like in Colvin County, if there's a third party that does something... A non-governmental third party. A non-governmental third party. Induced to do this by an offer of money that the party cannot get anywhere else that it desperately needs. Well, Your Honor, to be fair, the fact that they couldn't get it anywhere else was not a result of the government's action. And induced to do that, when you say that, Your Honor, respectfully, that is something that Chrysler not only could have done absent the government's intervention, but as you'll see with the next plaintiff, they acknowledge that Chrysler planned on doing it anyway. And said that in their viability analysis. Plaintiffs haven't alleged that in their complaint. In fact, one of the things that they've done with their complaint is they've left out so many allegations, Your Honor, discussed our narrative. Their narrative is about the space that they've left open by simply not mentioning things in their complaint. And under Iqbal and Twombly, that's not good enough. They have to allege a plausible government action that required a taking of their property. There was no physical taking of their property. The government did not regulate their property. And our interaction with Chrysler was a financial transaction that Chrysler could have walked away from. And that Chrysler had the choice to walk away from. Okay. Any more questions on this case? Okay. Thank you, Mr. Dinser. We will have a change of counsel.